---

## In Re Díaz.

### Disbarment proceedings.

No. 3.—Decided February 12, 1910.

DISBARMENT—JURISDICTION.—Under the law and following the cases of *Ex parte Wall*, 107 U. S., 265, and *Rochester Bar Association* v. *Dorothy*, 152 N. Y., 596, this court held that it had jurisdiction of this case.

ID.—ALTERATION OF RECORD—IMPLICATION OF RESPONDENT.—It is immaterial whether the respondent was or was not guilty of the alteration in question, and it is sufficient that he consented thereto and took advantage thereof to deceive the court.

ID.—DECEIVING COURT—BENEFIT BY ALTERATION.—In view of the evidence presented at the trial, this court held that it had been proven that the respondent, whether he took part in the alteration or not, acquiesced therein either before or after it had been made, and took advantage thereof with the intention of favoring his client and for the purpose of helping his case, seeking to deceive this Supreme Court, which at that time had cognizance of the principal suit, and had jurisdiction thereof, by virtue of the *certiorari* proceedings then pending.

ID.—MISSION OF ATTORNEYS AT LAW—OFFICERS OF THE COURT.—The mission of attorneys at law in society is of great nobility, because they are called upon to assist in the honest administration of justice. Not only the parties interested in the proceedings, but the courts themselves trust in them. Court records must be considered sacred by all, and especially by their own officials, who include attorneys at law practicing before them.

The facts are stated in the opinion.

*Mr. Henry M. Hoyt, 2d., Attorney General, and Mr. Luis Campillo, fiscal,* for complainant.

*Messrs. Herminio Díaz, Jacinto Texidor, Cay. Coll Cuchí and Ramón Falcón* for respondent.

Mr. Chief Justice Hernández delivered the opinion of the court.

In this case it is sought to disbar Attorney Herminio Díaz Navarro in accordance with the provisions of the act "Providing for the organization of a committee of attorneys at law to examine and report upon the moral qualifications of applicants for admission to practice law before the courts of the Island of Porto Rico, defining certain duties of attorneys and counsellors at law, and for other purposes," approved March 11, 1909.

On November 16, 1909, the Attorney General of Porto Rico filed a complaint in the office of the secretary of the Supreme Court against Attorney Herminio Díaz Navarro, in which the following facts are alleged:

"First. That said attorney, Herminio Díaz Navarro, is an attorney at law authorized to practice in this court and other insular courts.

"Second. That in the *certiorari* proceedings of the *Société Anonime des Sucreries de Saint Jean* v. *Jorge Domínguez,* Judge of the District Court of Humacao, which are pending in this court, in which case said Herminio Díaz Navarro is counsel for the petitioner firm, the said Herminio Díaz Navarro, while in having in his possession the original record sent to this court by the District Court of Humacao in said proceedings—that is to say, record No. 1134, entitled *Francisco Sánchez* v. *La Société Anonime des Sucreries de Saint Jean*—maliciously and with intent to deceive this court, knowingly altered, or permitted the alteration of, the original answer contained in said record on page 16 thereof, by filling in, or permitting to be filled in, the jurat following said answer and erasing a part thereof in the same manner; writing, or permitting to be written at the end of said jurat, the words 'Enrique Rincón, Secretary, District Court,' and erasing, or permitting the erasure of, the words 'Notary Public.'

"Third. That said attorney, Herminio Díaz Navarro, returned the record to the court with the above-mentioned alteration, without informing the court that such alteration had been made and with the intention of deceiving the court and taking advantage of such alteration for the benefit of himself and that of his client.

"Fourth. That such acts constitute one of the causes for the suspension and removal from the office of attorney specified in section 10 of the act entitled 'An Act providing for the organization of a

committee of attorneys at law to examine and report upon the moral qualifications of applicants for admission to practice law before the courts of the Island of Porto Rico, defining certain duties of attorneys and counsellors at law, and for other purposes,' approved March 11, 1909.''

A day having been set for the hearing of the charges and the defendant having been duly notified, the latter alleged that the Supreme Court did not have jurisdiction and that the charge was insufficient. These allegations were fully discussed by the parties interested at a hearing held for the purpose, and the court, after considering them carefully, held that it had jurisdiction and that the complaint was sufficient. (See the cases of *Ex parte Wall,* 107 U. S., 265, and those cited therein, and that of *Rochester Bar Association* v. *Dorthy,* 152 N. Y., 596.)

The defendant in due time filed the answer which appears of record denying the charges against him. Said answer contains four so-called defenses, contains seven typewritten pages and shows that the charges were properly understood by the defendant, who was enabled, therefore, to prepare his defense with entire clearness, fullness and precision.

This Supreme Court met in public session on January 19, 20, 21 and 22 last and heard the evidence and the arguments of both parties.

A careful consideration of the pleadings, the evidence, the arguments and the law applicable to the case show the following facts to have been proved beyond reasonable doubt:

A civil action was prosecuted in the District Court of Humacao under No. 1134 by *Francisco Sánchez* v. *La Société Anonime des Sucreries de Saint Jean,* for damages for failure to perform a contract. The original record of this action was transmitted to this Supreme Court by virtue of a writ of *certiorari* applied for on May 21, 1909, by the said defendant Société Anonime des Sucreries de Saint Jean, represented by Attorney Herminio Díaz Navarro against Jorge V. Domínguez, Judge of the District Court of Humacao, with the prayer

that this court set aside the final judgment which was rendered and entered on March 20, 1909, and all other proceedings had in violation of the laws of procedure, the following document forming part of such record: the complaint, signed by Attorney Arturo Aponte, at folios 1, 2, 3 and 4; the answer, signed by Attorney Cay. Coll Cuchí, at folios 12, 13, 14, 15 and 16; the amended complaint, signed by the said Aponte, at folios 17, 18, 19 and 20; and the amended answer, signed by Herminio Díaz, at folios 43 to 50, both inclusive. At folio 59 of said record appears also a copy of the last judgment, the annulment of which is sought, a judgment rendered upon the pleadings and against the defendant Société Anonime des Sucreries de Saint Jean, the court holding that the law was in favor of the plaintiff "inasmuch as the complaint is sworn to in due form and the answer of the defendant, although sworn to, contains only a general denial of all the facts and not a specific denial of each material fact of the aforesaid complaint." In speaking of the complaint and answer in this judgment, the District Court of Humacao referred to the amended answer and complaint. In referring hereafter to the answer, which appears at folios 12 to 16 of the original record, we will call it the original answer. All that has been stated above is established in the said original records and the record of the proceedings of the *certiorari* case, both presented and admitted as evidence.

When the original record reached this Supreme Court, the last page of the original answer—that is to say, page 16 of the original record—appeared in the following form:

-5-                                                                      16-

ISLAND. OF PORTO RICO, ⎫
                        ⎬ SS:
DISTRICT OF SAN JUAN.   ⎭

CAY. COLL CUCHÍ, DECLARES AND SWEARS:

That he is one of the attorneys of the defendant company; and that the facts above stated are all of them true to the best of his

knowledge and belief, the agent of the company not taking this oath on account of his absence.

CAY. COLL CUCHÍ.

Sworn to and signed before me this 28th day of September, 1908.

_____<br>
_Notary Public._

Filed September 29, 1908.

RINCÓN.

This fact is proved by the testimony of witnesses Arturo Aponte, Miguel Guerra and Antonio F. Castro.

On May 28, 1909, a hearing was had in this Supreme Court on the application for a writ of _certiorari_ to which reference has been made; on June 3, Attorney Herminio Díaz Navarro filed another application for a writ of _certiorari_ praying for the annulment by this court of all the proceedings had in said action after December 28, 1908, the date an appeal was taken, a hearing on this second application for a writ of _certiorari_ having been had on the 16th of said month of June, with the attendance of Attorneys Díaz Navarro, representing the petitioner, and Miguel Guerra, in substitution of Arturo Aponte, on behalf of Francisco Sánchez; and on the 25th of said month of June the court, in view of the importance of the questions at issue, submitted an interrogatory to the consideration of the parties and set October 6, 1909, for a new hearing. The facts we have just set forth appear established by an examination of the records of the proceedings in the _certiorari_ cases.

The morning of June 26, 1909, the last of the sessions of the third term of this court, the defendant, Herminio Díaz Navarro, who, as has been said, was the attorney for the defendant and appellant company, requested the delivery to him of the original record of the principal action and of the two cases of _certiorari_, which the Chief Justice of the Supreme Court granted, the delivery having been made by the secretary, and from this moment until September 21, 1909, the said records were in the possession and under the custody of the

defendant, who returned them upon demand through one of the bailiffs of this court, all of which is established by the testimony of witnesses, Antonio F. Castro, Eugenio Alvarez and Ramón Trigo.

When the record of the principal action was delivered to the defendant, the last page of the original answer was in the form above described. The secretary of this Supreme Court had so seen it the day preceding the delivery, as he stated under oath, and there is no ground even to suppose that it could have been altered before being delivered, inasmuch as said record remained in the office of the justice preparing the opinion as stated under oath by the secretary, and it was taken therefrom by the said secretary to be delivered at once to the defendant. But when said record was again received in the office of the secretary, upon its return by the defendant, the last page of the original answer, page 16 of the record appeared, as it now appears, in the following form:

ISLAND OF PORTO RICO, ⎫
                       ⎬ SS:
DISTRICT OF SAN JUAN. ⎭

CAY. COLL CUCHÍ, DECLARES AND SWEARS:

-5-                                            16-

That he is one of the attorneys of the defendant company; and that the facts above stated are all of them true to the best of his knowledge and belief, the agent of the company not taking this oath on account of his absence.

CAY. COLL CUCHÍ.

Sworn to and signed before me this 28th day of September, 1908.

ENRIQUE RINCÓN,
*Secretary, District Court.*

Filed September 29, 1908.

RINCÓN.

A change had been made therefore, and such change must necessarily have been made while the record was in possession of the defendant.

There is no evidence whatsoever that the defendant himself changed the record and wrote the name of "Enrique Rincón" and the words "Secretary, District Court"; and this is so to such an extent that the *fiscal* in his oral argument admitted that such name and words had been written by the said Enrique Rincón.

What has been proved, however, is that the defendant, Herminio Díaz Navarro, before requesting the original records, and before they were delivered to him, knew that the jurat of the original answer had not been attested by any official whatsoever. This is shown by the testimony of witnesses, Attorneys Arturo Aponte and Miguel Guerra, of whom the former says that while a motion was being argued in the District Court of Humacao to set aside the default filed by Attorney Herminio Díaz Navarro, on behalf of the Société Anonime des Sucreries de Saint Jean, Aponte made the allegation in the presence of Díaz Navarro that the answer had not been sworn to, and the second witness—that is to say, Guerra—referring to the question of the oath, expressed himself in the following terms: "After the hearing while in the attorneys' room, where I had gone to remove my toga, or here in the hall, I do not remember which, the fact is that Díaz Navarro, with his customary kindness and with the deference with which he has always treated me, asked me whether I was going down town—that is to say, to the plaza— and I told him that I was; then he invited me to go in his carriage, which invitation I accepted. After entering the carriage, I will not say the exact words which were exchanged, but my impression of the conversation is the following: 'I have you beaten in this case, my boy, or Miguel,' I do not remember which; and I replied, 'There would be nothing strange in my losing this case, I have lost a number; but I could acquiesce in what you request, because if you seek to have all the proceedings eliminated and declared null and void after the appeal of December 28, 1908, to the termination of

the action, an abandoned appeal would remain in force; but even assuming,' I continued saying to Díaz Navarro, 'even assuming that said appeal were prosecuted, were brought to this court, we would find that the complaint of Sánchez made by Aponte is sworn to, and we would have on one side a sworn complaint and on the other an answer not sworn to.' I do not remember exactly the words employed by Díaz Navarro in replying, to be truthful, but I do remember that in the course of the conservation I insisted several times that said answer had not been sworn to. We arrived in front of the office of Díaz Navarro, said good-bye, and I went to my office."

The testimony of the secretary of this court, as well as that of Aponte and Guerra, are considered in the highest degree credible by this court because the manner in which it was given reveals that they do not bear the slightest animosity toward the defendant, the last two going to the extent of affirming that they do not suspect that he had taken part in the alteration of the jurat. They wished to relieve the defendant of all liability, but guided by the prompting of an honest conscience and their professional duties they are obliged to testify to facts which support the charges against their colleague, Herminio Díaz Navarro.

It has also been proved that the defendant, while the records were still in his possession, had knowledge of the fact that the change had been made. The defendant and his clerk, Witness Rafael Rodríguez, testified in this Supreme Court that the former personally prepared the original of the printed brief submitted to this court on October 6, 1909, the date the new hearing was had, himself writing not only the arguments, but also personally copied the documents transcribed in the brief. One of said documents is the original answer, and after having the same copied the following is stated: "5. This *answer* is sworn to at folio 16 of the record in the following form:

Island of Porto Rico, 
District of San Juan. } ss:

"Cayetano Coll Cuchí declares and swears that he is one of the attorneys of the defendant company; and that the facts above stated are all of them true to the best of his knowledge and belief, the agent of the company not taking this oath on account of his absence. (Signed) Cayetano Coll Cuchí.

"Sworn to and signed before me this 28th day of September, 1908. (Signed) Enrique Rincón, Secretary, District Court."

It is difficult, if not impossible, to arrive at an exact knowledge of the precise circumstances of place and time of the alteration of the jurat which has given rise to this case. In order to establish these circumstances it would be necessary for the persons who took part in said alteration to come before this court and state them in the absence of other witnesses; but the lack of proof of such circumstances does not prevent us, in the light of the evidence heard in this case, from determining the liability of the defendant, aside from the liability of other persons in connection therewith.

The defendant had in his possession the record of the action containing the certificate of the oath to the answer to the complaint unattested by any official whatsoever, when said record was delivered to him; this jurat was altered while the record was in his possession, an official affixing thereto the signature authorizing the certificate; Díaz Navarro knew that the jurat, when the record was delivered to him, had not been attested or signed, because the testimony of Aponte and Guerra show this fact; Díaz Navarro, notwithstanding this knowledge, copied in the brief, which he filed in this Supreme Court in printed form, the manuscript of which he himself wrote, the certificate of the amended oath; and, finally, Díaz Navarro alleged in that brief, immediately after the copy of the amended certificate, that the answer had been sworn to; it is impossible that at such time he should not have recollected the words which Guerra addressed to him, after the

hearing on June 16, when he told the latter that he would win the case, which words we have transcribed. These facts convince us beyond any reasonable doubt, according to the natural and ordinary order of things, that Díaz Navarro, whether a participant in the alteration or not, accepted it, before or after it had been made, and took advantage thereof for the purpose of favoring his client and for the benefit of the cause he defended, endeavoring thereby to deceive this Supreme Court, which was then taking cognizance of the principal action with jurisdiction over it all, by virtue of the applications for writs of *certiorari*. With respect to this, see what Díaz Navarro says in his brief, pages 41 and 42:

"The defendant having filed an original answer and then, with the leave of the court, an amended answer, both under oath in the form in which they appear in the record, the judgment on the pleadings rendered in this case has violated the principles consecrated by jurisprudence in the following cases:

"(a) *   *   *

"(b) *   *   *

"(c) *   *   *

"(d) The original answer is not annulled by an amended answer when the latter is eliminated on account of its having been improperly drawn, because in such case the original continues as the answer and it is an error to give a judgment on the pleadings in favor of the plaintiff, upon the basis that there is no allegation whatsoever in favor of the defendant. (*Spooner* v. *Cady*; [Cal., 1894], 36 Pac. Rep., 104.)"

As will be observed, the third statement of the complaint has been substantiated as to the points it embraces, and the sanction for this act is to be found in sections 9 and 10 of the aforesaid Act of March 11, 1909.

It matters not whether the defendant was guilty of the alteration in question or not, it being sufficient that he acquiesced therein and took advantage thereof to deceive the court.

The mission of attorneys at law in society is of great nobility, because they are called upon to assist in the honest

administration of justice. Not only the parties interested in the proceedings, but the courts themselves trust in them. Court records must be considered sacred by all, and especially by their own officials, which include the attorneys at law practicing before them. We do not believe it necessary to cite here the large series of cases of disbarment decided by the Supreme Court of the United States and by the supreme courts of the various States, especially those of New York and California, which we have considered before definitely deciding this case.

In view of all the circumstances of this case, and this being the first which we have been called upon to decide under the new disbarment act, we believe that, instead of permanently disbarring the defendant from the practice of law, we should suspend him for a specific period of time—that is to say, for a period of one year—by which action the high purposes of the said act will be met.

*Accordingly decided.*

Justices Figueras, Wolf and del Toro concurred.
Mr. Justice MacLeary dissented.